## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Michael Rogers, | ) | |
|     a/k/a Michael Harris, | ) | |
|     a/k/a Michael Smith, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:08cv14 (LMB/BRP) |
| | ) | |
| Attorney General of Virginia, et al., | ) | |
|     Respondents. | ) | |

### MEMORANDUM OPINION

Michael Rogers a/k/a Michael Harris a/k/a Michael Smith, a Maryland inmate proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his conviction in the Circuit Court for the County of Arlington, Virginia for robbery and use of a firearm. By Order dated April 8, 2008, respondent, the Attorney General of Virginia,[1] was directed to show cause within sixty days why the writ should not be granted. On June 9, 2008, respondent filed a Motion to Dismiss the petition, a memorandum of law in support of that Motion, a Rule 5 Answer, and the Notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4 Cir. 1975). Petitioner was given the opportunity to file responsive materials, but to date he has filed no reply. For the reasons that follow, the petition will be dismissed.

---

[1] Although petitioner is currently in custody in Maryland he challenges the future custody to which he is subject as a result of his conviction in the Circuit Court for the County of Arlington, Virginia. Accordingly, the Attorney General of Virginia is a proper respondent in this case. See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts. Petitioner's current custodian, Roderick Sowers, the Warden of the Roxbury Correctional Institution in Hagerstown, Maryland, has also been named as a respondent. See id.

## I. Background

On May 13, 2000, the Arlington Pawn Shop was robbed at gunpoint by three men. On June 9, 2000, a magistrate in Arlington County, Virginia, issued an arrest warrant for petitioner, who was then incarcerated in Prince Georges County, Maryland on unrelated charges. That same day, the Arlington County Police Department's warrant division transmitted a detainer and a copy of the arrest warrant to the Prince Georges County jail where petitioner was confined. The detainer requested petitioner's continued detention and indicated that Arlington County was willing to extradite him.

On or about January 10, 2001, petitioner submitted a request to the Commonwealth's Attorney's Office for Arlington County for disposition of the warrant pursuant to the Interstate Agreement on Detainers ("IAD").[2] On May 25, 2001, a second detainer and copy of the warrant were transmitted to the jail in Montgomery County, Maryland, where petitioner had been transferred. Once again, the detainer requested petitioner's continued detention and indicated Arlington County's willingness to extradite petitioner.

On May 16, 2005, a grand jury in the County of Arlington, Virginia returned indictments against petitioner for robbery and use of a firearm in the commission of a robbery. Petitioner arrived in Virginia on August 16, 2005. Contending that his rights under Va. Code §§ 19.2-243 (Virginia's speedy trial statute) and 53.1-210 (the IAD) had been violated, petitioner filed a motion to dismiss

---

[2] The Interstate Agreement on Detainers, or IAD, 18 U.S.C. App. § 2, is a compact among 48 States, the District of Columbia, and the Federal Government. Reed v. Farley, 512 U.S. 339, 342 (1994). It enables participating states to gain custody of a prisoner incarcerated in another jurisdiction in order to try him on criminal charges. Id. Although the IAD is a voluntary interstate agreement and thus is state law, it is congressionally sanctioned and has been deemed for that reason also to comprise federal law subject to federal construction. Carchman v. Nash, 473 U.S. 716 (1985); Cuyler v. Adams, 449 U.S. 433 (1981).

the indictments on October 16, 2005, for failure to conduct a speedy trial and/or for failure to comply with the IAD. The trial court denied the motion and set trial for November 2, 2005. The trial date subsequently was continued on joint motion to January 23, 2006. On January 18, 2006, petitioner renewed his motion to dismiss the indictments for failure to conduct a speedy trial and/or for failure to comply with the IAD, this time basing his arguments on the Supreme Court's holdings in Barker v. Wingo, 407 U.S. 514 (1972)[3] and Fex v. Michigan, 507 U.S. 42 (1993). The trial court denied the renewed motion, and petitioner was convicted by a jury in the Circuit Court for the County of Arlington, Virginia of both offenses charged on January 24, 2006. On March 10, 2006, petitioner was sentenced to serve 15 years in prison.

Petitioner filed a direct appeal in the Court of Appeals of Virginia, claiming that: 1) the trial court erred in denying his motion to dismiss, and 2) the evidence was insufficient to support his convictions. Pet. for Appeal dated Aug. 14, 2006. On November 21, 2006, the Court of Appeals of Virginia refused the petition for appeal. Rogers v. Commonwealth, R. No. 1408-06-4, slip op. (Va. Ct. App. Nov. 21, 2006). Petitioner then appealed to the Supreme Court of Virginia, again challenging the trial court's disposition of the motion to dismiss and the sufficiency of the evidence supporting his convictions. Pet. for Appeal dated Dec. 21, 2006. The Supreme Court of Virginia refused the petition for appeal on June 14, 2007. Rogers v. Commonwealth, R. No. 070245, slip

---

[3] Under the Sixth Amendment, defendants accused of crimes enjoy "the right to a speedy and public trial," U. S. Const. amend VI, and the Fourteenth Amendment extends this right to criminal trials in state court. Klopfer v. North Carolina, 386 U.S. 213 (1967). In Barker, the Supreme Court adopted a four-factor balancing test to be used in evaluating speedy trial violation claims under the Sixth Amendment: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant timely asserted the right to a speedy trial; and 4) whether the defendant suffered prejudice as a result of the delay. 407 U.S. 514, 530-32 (1972). Under this test, a petitioner must show "that on balance, the four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995).

order (Va. June 14, 2007). In both petitions for appeal, petitioner claimed that his speedy trial rights under the Sixth Amendment and Va. Code §19.2-243 had been violated, and that the Commonwealth had not complied with the IAD.

Petitioner filed the instant petition for a federal writ of habeas corpus on or about December 21, 2007. He appears to claim that: 1) his Virginia and Sixth Amendment speedy trial rights were violated in this case, and 2) the Commonwealth did not comply with the IAD because it failed to prosecute him within 180 days after January 10, 2001, the date petitioner lodged his request to be tried.

## II. Exhaustion and Procedural Default

In reviewing a petition brought pursuant to 28 U.S.C. § 2254, a federal court as a threshold matter must determine whether petitioner has exhausted his claims before the appropriate state courts and whether those claims are barred by a procedural default. As a general rule, a petitioner must first present his claims to the state courts because exhaustion is a matter of comity; failure to exhaust a claim requires its dismissal by the federal court so that it may first be considered by the state tribunals. See 28 U.S.C. § 2254(b); Granberry v. Greer, 481 U.S. 129, 134 (1987); Rose v. Lundy, 455 U.S. 509, 515-19 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, petitioner must have presented the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (I) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition. See Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270,

4

275-78 (1971) for the proposition that a claim is exhausted when it is "'fairly presented' to the state courts," meaning that "both the operative facts and the 'controlling legal principles' are presented to the state court.").

This does not end the exhaustion analysis, however, because "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Importantly, however, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. (quoting Gray, 518 U.S. at 162).

Furthermore, federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In this case, the respondent acknowledges correctly that petitioner exhausted available state court remedies as to both of his present claims. However, as the respondent points out, the second component of petitioner's first claim, where petitioner contends that his Sixth Amendment right to a speedy trial was violated, is procedurally barred from federal consideration. In its decision refusing

Rogers' direct appeal, the Court of Appeals of Virginia stated, "Appellant did not argue at the hearings before the trial court on his motion to dismiss that his constitutional rights to a speedy trial were violated. Accordingly, to the extent that appellant makes such an argument, we will not address it for the first time on appeal." Rogers v. Commonwealth, slip op. at n.1. Rogers did not challenge this express finding of procedural default in his subsequent appeal to the Supreme Court of Virginia, nor has he shown cause to excuse his default nor prejudice resulting from a lack of review in this federal proceeding. Therefore, the Court will not consider the allegations raised in the petitioner's first claim regarding his federal constitutional right to a speedy trial.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs a foul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an

6

objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## IV. Merits

In his first claim before this court, petitioner argues that both his state and federal rights to a speedy trial were violated in this case. As discussed above, the portion of this argument concerning the alleged violation of petitioner's Sixth Amendment right to a speedy trial is procedurally barred from federal consideration on the merits. To the extent that petitioner asserts that the guarantee of a speedy trial set out at Va. Code §19.2-243 was violated in his case, his claim is not a cognizable predicate for § 2254 relief. Federal habeas corpus will lie only to correct errors of federal constitutional dimension. Barbe v. McBride, 521 F.3d 443 (4th Cir. 2008); Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). Therefore, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Bates v. Lee, 308 F.3d 411, 420 (4th Cir.), cert. denied, 538 U.S. 1061 (2003), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Even if it is assumed that, as petitioner argues, his state statutory right to a speedy trial was impaired, that deprivation is not remediable in this federal habeas corpus proceeding, so petitioner is entitled to no relief on either component of his first claim.

In his second claim, Rogers asserts that the Commonwealth did not comply with the IAD because it failed to prosecute him within 180 days after January 10, 2001, the date petitioner lodged

7

his request to be tried. However, this contention is unavailing for two reasons.

First, the Fourth Circuit, along with the majority of federal circuits, holds that a violation of the IAD, without more, generally comprises no ground for habeas corpus relief. The Supreme Court in Davis v. United States, 417 U.S. 333 (1974), held that the appropriate inquiry to determine if a writ of habeas corpus is warranted is "whether the claimed error of law [is] 'a fundamental defect which inherently results in a complete miscarriage of justice," and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy ... is apparent.'" Id. at 346, quoting Hill v. United States, 368 U.S. 424 (1962). The Fourth Circuit looked to that formulation in Kerr v. Finkbeiner, 757 F.2d 604, 607 (4th Cir.), cert. denied, 474 U.S. 929 (1985) in holding that an IAD violation does not constitute a fundamental defect and thus is not cognizable on federal habeas corpus review absent a showing of prejudice.

In Kerr, as here, the petitioner sought habeas corpus relief for an alleged violation of the 180-day time provision of Article III(a) of the IAD. The Court noted that petitioner had introduced no evidence to show that the delay caused him to suffer prejudice in his incarceration or in defending against his criminal charges, and found that the case did not "'present exceptional circumstances where the need for ... habeas corpus [was] apparent.'" Cf. Davis, 417 U.S. at 346. Accordingly, Court held that the alleged violation of the IAD was not cognizable under § 2254. Kerr, 757 F.2d at 607. Here, petitioner does not contend, much less demonstrate, that he suffered any explicit prejudice as the result of the IAD violation he alleges. Without such a showing, petitioner's argument states no basis for federal habeas corpus relief.

Second, even if it were assumed that petitioner could proceed on his IAD claim, he would be entitled to no relief on the merits. The IAD provision at issue provides:

8

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint... .

Va. Code Ann. § 53.1-210, Art. III (a). By its terms, then, the IAD is implicated when a prisoner is subject to an "untried indictment, information or complaint on the basis of which the detainer has been lodged...". It does not apply where a detainer is based on a felony arrest warrant. Locklear v. Commonwealth, 7 Va. App. 659, 663, 376 S.E.2d 793, 795 (1989)(felony arrest warrant is not an untried indictment or information, nor is it a complaint).

In this case, the grand jury did not return indictments arising out of the May, 2000, pawn shop robbery until May 16, 2005, so the IAD was not triggered until a detainer was lodged on that basis.[4] Once petitioner requested final disposition of the indictments,[5] the Commonwealth had 180 days within which to act in compliance with the IAD, and it did so by scheduling his trial for November 2, 2005. The fact that the trial was continued on joint motion until January 23, 2006, was not chargeable against the Commonwealth.

Under these circumstances, no violation of the IAD occurred in this case. Therefore, if

---

[4]The detainers lodged by the Commonwealth requesting petitioner's continued detention by Maryland authorities in January and May of 2001 arose from the robbery arrest warrant, so the IAD was not then implicated. Cf. Locklear, 376 S.E.2d at 795.

[5]In Fex v. Michigan, 507 U.S. at 52, the Supreme Court held that the 180-day period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and the prosecuting officer of the jurisdiction that lodged the detainer.

9

petitioner's IAD claim were to be deemed cognizable in this § 2254 proceeding, its rejection on the merits by the Court of Appeals of Virginia was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, federal habeas corpus relief is not warranted for the IAD violation petitioner alleges.

## V.  Conclusion

For the above reasons, respondent's Motion to Dismiss will be granted, and this petition will be dismissed.  An appropriate Order shall issue.

Entered this ___4ᵗʰ___ day of __November_____ 2008.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge

10